UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH WALDEMAR,

    Plaintiff,

v.                                                           Case No: 8:18-cv-313-T-36TGW

SHAUN P. GOLDEN and GOLDEN
WEALTH MANAGEMENT, INC.,

    Defendants.
_____/

# **ORDER**

This matter comes before the Court upon Defendants' Amended Motion to Dismiss (Doc. 17), and Plaintiff's response in opposition (Doc. 23). In the motion, Defendants argue that Plaintiff's claims are premised on alleged oral instructions, which were prohibited by and in contradiction of, the written contracts at issue. The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Amended Motion to Dismiss.

    **I.**     **Background and Statement of Facts[1]**

Plaintiff, Deborah Waldemar, sues Defendants Shaun P. Golden and Golden Wealth Management, Inc. ("Golden Wealth") for allegedly misleading her regarding certain investment strategies and fees associated with an investment portfolio containing funds from her deceased husband's life insurance proceeds and her Individual Retirement Account ("IRA"). Waldemar is an elderly widow. *See* Doc. 2 at ¶ 2. Defendants conduct investment advisory business activities

---

[1] The following statement of facts is derived from the Complaint (Doc. 2), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

in Florida and are registered as investment advisors with Florida's Office of Financial Regulation. *Id*. at ¶ 5. Several years ago, Golden sold a life insurance policy to Waldemar's husband. *Id*. at ¶ 8. Within 10 days of his passing, Golden contacted Waldemar and offered his services to handle the investment of the $426,000 life insurance proceeds. *Id*. Golden gained control of the insurance proceeds and the money in her IRA account in his capacity as her investment advisor. *Id*. at ¶ 9.

In 2015, Waldemar signed the following agreements with Defendants: the Golden Wealth Financial & Estate Planning Agreement ("FEPA") and the Investment Management Agreement ("IMA"), both dated January 22, 2015. *Id.* at ¶ 13 Ex. B, Ex. C. Golden did not explain these agreements to Waldemar. *Id*. at ¶ 14. The FEPA covered "services and fees provided by the Advisor for financial planning, estate planning and any time spent on [the] requested matters ..." at the fee of "$395 per hour plus disbursements for any time spent on [the] matter." *Id*. at ¶ 15. In the IMA, Golden agreed to provide investment advice and management with discretionary control over the amounts invested, for an additional fee of 2% per year of the Net Asset Value ("NAV") and 20% of the increase in the NAV per month with adjustments for any prior losses. *Id*. at ¶ 16.

When Defendants took control of Waldemar's accounts, it contained $426,319, plus interest from the insurance proceeds and $79,266.34 from her IRA. *Id*. at ¶¶ 18-19. Waldemar told Golden that she wanted her funds held in the Interactive Brokers' accounts and not traded until further notice. *Id*. at ¶ 20. She also informed Golden that her income would drop significantly and there was a $192,000 line of credit coming due in January 2016 which she wanted to pay off prior to investing. *Id*. at ¶ 21. The funds represented a substantial portion of Waldemar's liquid net worth. *Id*. at ¶ 22. Contrary to Waldemar's instructions, Defendants immediately began trading the funds. *Id*. at ¶ 23. Waldemar did not request periodic review of her accounts. *Id*. at ¶ 24. In October

2015, Waldemar met with Golden to review her accounts and learned of the almost $200,000 loss from her account. *Id*. Golden had charged $55,000 in fees up to that point. *Id.* at ¶ 28.

The FEPA (Doc. 2 at 33-36) states that it is governed by New York law, and that "[t]he Client acknowledges receipt of Form ADV Part 2 disclosure brochure and the Advisor's Privacy Notice." *Id*. at ¶ 35. The IMA (Doc. 2 at 38-53) states the following:

> During the terms of this Agreement the Investment Manager [Golden] shall have discretionary authority for the management of the assets in the Separate Account subject to the Investment Guidelines and Additional Instructions (as defined below).
> ...
> The Investment Manager agrees to perform its duties hereunder pursuant to...any other specific instructions and directions which the Client shall provide to the Investment Manager in writing ("Additional Instructions"). The Investments Manager acknowledges and agrees that it is acting as a fiduciary with respect to the Client's assets in the Separate Account.
> ...
> The Client acknowledges receipt of the Investment Manager's Form ADV Parts 2A and 2B (the Brochure and Brochure Supplement), and its Privacy Policy.
> ...
> This Agreement and the related Schedules, Attachments and Exhibits, embody the entire understanding of the parties; supersede any prior agreements or understandings with respect to the subject matter hereof; and, except as otherwise set forth herein, cannot be altered, amended, supplemented or abridged or any provisions waived except by written agreement of the parties.

IMA at §§ 1, 2(a), 18, 19(e).

Unknown to Waldemar, in December 2011, the Financial Industry Regulatory Authority ("FINRA") sanctioned Golden by permanently barring him from any association, in any capacity, with any FINRA brokerage firm (the "FINRA bar"). *Id*. at ¶ 11. On February 8, 2017, Florida's Office of Financial Regulation issued a Final Cease & Desist Order ("Final Order") against Golden and Golden Wealth directing them to refrain from further violations of Florida Securities Investor Protection Act ("FSIPA"), Chapter 517 of the Florida Statutes. *Id*. at ¶ 12. The order barred

Defendants permanently from submitting any application for licensure or registration under the FSIPA. This ban prevents Defendants from acting as securities brokers, registered representatives, or investment advisors in Florida. *Id*.

Waldemar brings five counts against Defendants: Count I - Fraudulent Inducement and Common Law Fraud; Count II - Breach of Fiduciary Duty, Count III - Negligence, Count IV - Breach of Contract and Count V - Violation of the FSIPA. Defendant removed the case to this court asserting diversity jurisdiction. Doc. 1.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

## III. Discussion

Defendants argue the following in their Motion. The exhibits attached to the Complaint contradict Plaintiff's allegations. Doc. 17 at 2. The Complaint is groundless and subject to dismissal because the basis of Plaintiff's claims is that she gave Defendants oral instructions

regarding her investment accounts and the IMA requires written instructions. *Id*. Defendants assert that they disclosed Golden's FINRA bar in Form ADV Parts 2A and 2B because the IMA includes an express acknowledgement of receipt of Form ADV Parts 2A and 2B. Defendants argue that the acknowledgement undermines any causes of action based on the lack of disclosure. *Id*. at 4.

Waldemar asserts that she has alleged sufficient facts under Rule 8 of the Federal Rules of Civil Procedure to state a claim for relief, the allegations are sufficient to sustain each claim, and Defendants' arguments are akin to affirmative defenses as opposed to bases for dismissal. Doc. 23. Although the parties cite Florida law throughout their pleadings, both agreements state that New York law governs the contracts. FEPA at 2, IMA at § 16.

### a. Choice-of-Law Analysis

Federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state (Florida), including its choice of law rules. *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1326 (S.D. Fla. 2012), *aff'd sub nom. Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014). "[U]nder Florida law, courts 'will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'" *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)). A choice-of-law provision is presumptively valid and the party seeking to avoid enforcement of the provision has the burden to demonstrate why it should not be enforced. *Mazzoni Farms, Inc.*, 761 So. 2d at 311. The parties neither briefed the substantive law of New York nor demonstrated any conflict between New York and Florida law regarding oral modifications to written agreements.

Specifically, the choice-of-law provisions provide that "[t]his Agreement shall be governed and construed according to the laws of the State of New York[,]" FEPA at 3; and "[t]o the extent

Federal law does not apply to this Agreement, it shall be construed in accordance with the law of the State of New York." IMA at ¶ 16. Nonetheless, Florida law will govern some of the causes of action at issue. *See Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003). In *Greenleaf*, the Eleventh Circuit found that similarly narrow language[2] governed only the scope and effect of the contractual term at issue, and the choice-of-law rules of the forum state (Florida) determined the applicable law governing the tort claims. *Id.* at 1301. *See also Maxcess, Inc.*, 433 F.3d at 1343 (holding that a court must look to the contractual choice-of-law provision to interpret other provisions within the contract). Thus, New York law governs the breach of contract claim and Florida law governs the remaining tort and statutory claims.

The Complaint is sufficient to plead a claim for Counts I -V. Further, the issue of whether Defendants properly disclosed the FINRA bar is an issue of fact which is inappropriate for the Court to determine at this juncture.

### b. Count I - Fraudulent Inducement and Common Law Fraud

To sufficiently allege a claim for fraud in the inducement, a plaintiff must allege the exact statements and alleged misrepresentations; the time and place of each such misrepresentation and who made it; the substance of the representations and how it misled the plaintiff; and the defendant's gain due to the alleged fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316–17 (11th Cir. 2007).

The essential elements of common-law fraud under Florida law are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in

---

[2] The contract language stated that "[t]his release shall be governed and construed in accordance with the laws of the State of Delaware." *Green Leaf Nursery*, 341 F.3d at 1300. The Court held that Delaware law would determine the scope and effect of the release, whereas the forum state's choice-of-law rules would govern the tort claims. *Id*.

6

reliance on the correctness of the statement; and (5) resulting damage to the other person. *Gandy v. Trans World Computer Tech. Group*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001).

The Eleventh Circuit has held that in order to comply with the mandate of Rule 9(b), a Plaintiff alleging fraud must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d at 1194, 1202 (11th Cir. 2011) (citations and quotations omitted).

Here, Waldemar alleges the following. The Defendants made representations in the IMA regarding their qualifications, including that Golden had no pending proceedings or regulatory actions against him which was false in light of the FINRA bar. Defendants also represented that they would act according to Plaintiff's instructions and investment objectives with the funds in her Interactive Brokers' accounts which was false in light of the transactions that followed. Doc. 2 at ¶¶ 39, 40. Defendants knew or should have known that their representations were false, and they intended those false statements to induce Plaintiff's reliance on them to sign the FEPA and IMA. *Id*. at ¶¶ 40, 41. Defendants made those representations in January 2015 when Plaintiff signed the agreements and in subsequent conversations. She suffered damages in the form of loss in value of her investment portfolio and $55,000 in excessive advisory fees from the misrepresentations. Based on the allegations in the Complaint, Plaintiff provides sufficient particularity under Rule 9 to allege her fraud claim. She also alleges sufficient facts to plead a claim for fraudulent inducement and common law fraud under Florida law.

### c. Count II – Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under Florida law, Waldemar must plead: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of plaintiff's damages. *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 246 F. Supp. 3d 1329, 1332 (M.D. Fla. 2017) (citing *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

Here, Plaintiff alleges the following. Defendants owed her the duty of a fiduciary, including the duty to act in her best interests and that they owed her a duty of good faith and full and fair disclosure of material facts. Doc. 2 at ¶ 44. They breached that duty when they did not act in her best interest and misled her and misrepresented their intent to take control of her savings; they also did not provide full and fair disclosure regarding the frequency of trading in her accounts, the advisory fees, and the FINRA bar. *Id.* at ¶ 45. Plaintiff suffered damages in the form of loss in value of her investment portfolio and excessive advisory fees as a direct and proximate result of the Defendants' breaches of fiduciary duty. *Id.* at ¶ 46. Based on the allegations in the Complaint, Waldemar has sufficiently stated a claim for breach of fiduciary duty. *See Abramowitz v. Westport Nat'l Bank*, 2009 WL 10667468, at *8 (S.D. Fla. Nov. 5, 2009) (finding plaintiffs stated breach of fiduciary duty claims under Florida law against investment advisors who managed money that was invested in Ponzi scheme); *In re Old Naples Secs., Inc.*, 343 B.R. 310, 321-24 (Bankr. M.D. Fla. 2006) (finding broker breached fiduciary duty in selling securities for which he failed to adequately investigate investments he recommended and fully explain risk of investments that were part of Ponzi scheme).

### d. Count III - Negligence

To allege a negligence claim under Florida law, a plaintiff must plead facts to plausibly show: "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Estate of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 788 (Fla. 2d DCA 2010) (citation omitted). *See also Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1146 (S.D. Fla. 2016). The Court determines as a matter of law whether or not a duty exists. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992). "The principle of 'duty' is linked to the concept of foreseeability and may arise from four general sources: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citing *McCain*, 593 So. 2d at 503 n. 2).

Florida courts have recognized negligence claims against financial professionals such as investment brokers and insurance agents. *See, e.g., Lucarelli Pizza & Deli v. Posen Constr., Inc.*, 173 So. 3d 1092, 1095 (Fla. 2d DCA 2015); *Abramo Abramowtiz,* 2009 WL 10667468, at *8 (finding plaintiffs stated negligence claim under Florida law against investment advisors who managed money and actively promoted investment in Ponzi scheme); *Old Naples*, 343 B.R. at 321-24 (finding that investor stated negligence claims against broker selling securities when broker failed to question validity of or investigate investments); *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 616 (S.D.N.Y. 2015) (applying Florida negligence law and finding that securities broker-dealers had a duty of care to conduct a proper investigation of recommended investments).

Waldemar alleges the following. The Defendants owed her a duty of care in providing investment advisory services; they fell below the standard of care for investment advisors by

9

excessively trading her accounts and deviating from her investment objectives, and she suffered losses that were a direct and proximate result of the Defendants' breach of care. Doc. 2 at ¶¶ 47-50. These allegations are sufficient to state a claim for negligence under Florida law.

### e. Count IV- Breach of Contract

Typically, under New York law, if an investment contract does not forbid the acts complained of, no cause of action exists for a breach. *See SFR Holdings Ltd. v. Rice*, 132 A.D. 3d 424, 426 (dismissing breach of contract claim because contract did not specifically prohibit the investments at issue). And the Defendants are correct in noting that generally oral modifications to written agreements are unenforceable if proscribed by the written agreement. *See John Street Leasehold LLC v. FDIC*, 196 F.3d 379, 382 (2d Cir. 1999) ("New York law enforces such requirements and does not permit oral modification when the original written agreement provides that modifications must be in writing and signed.").

But there are exceptions to that rule under New York law. *See, e.g., United States v. Schwimmer*, 968 F.2d 1570, 1575 (2d Cir. 1992) ("Under New York law, a contractual prohibition against oral modification may be waived by a course of conduct. This is particularly true where there has been performance in reliance on the oral modification." (citations omitted)); *Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 522 (2d Cir. 1990) (noting that New York law permits oral modification of no-oral-modification contract where there has been partial performance or detrimental reliance, so long as performance or reliance is "unequivocally referable to the oral modification").

Waldemar alleges the following. The FEPA and IMA obligated Defendants to act in her best interests, in a manner consistent with her investment objectives and instructions, in good faith and in compliance with the applicable laws, regulations, and FINRA rules. Doc. 2 at ¶ 51. They

breached those obligations and she has suffered damages as a result. *Id*. at ¶ 52. Waldemar does not solely rely upon her oral instructions as a basis for her breach of contract claim. She also alleges that Defendants excessively traded the Interactive Broker's accounts, charged her unreasonable advisory fees, charged fees in excess of the amounts authorized by the IMA, implemented unsuitable investment strategies, and did not send Waldemar an itemized invoice after Golden deducted advisory fees from the Interactive Brokers' accounts. Doc. 2 at ¶¶ 25-28, 31, 32, 35, 54 (incorporating the foregoing paragraphs by reference). Waldemar has, thus, alleged sufficient facts to survive dismissal of her breach of contract claim. Whether any oral modification to Plaintiff's written agreement is enforceable is more appropriately determined at the summary judgment stage.

### f. Count V - Violation of FSIPA

Pursuant to Florida Statute Section 517.301:

> It is unlawful and a violation of the provisions of this chapter for a person:
>
> (a) In connection with the rendering of any investment advice or in connection with the offer, sale or purchase of any investment or security ... directly or indirectly:
>
> 1. To employ any device, scheme, or artifice to defraud;
>
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or
>
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

The remedy for a violation of Section 517.301 is contained in Florida Statutes Section 517.211(2) which states:

> Any person purchasing or selling a security in violation of s. 517.301, and every ... agent of or for the purchaser or seller, if the ... agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person ... purchasing

> the security from such person in an action for rescission if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Here, Waldemar alleges the following. In connection with rendering their investment advice, and in the purchase and sale of securities to her, Defendants made material misrepresentations and omissions of fact. Doc. 2. at ¶ 55. They gained control of her savings based on these acts, excessively traded her accounts and did not follow her investment objectives. *Id.* at ¶ 56. Thus, they violated section 517.301, Florida Statutes; and under Section 517.211 they are jointly and severally liable. *Id.* at ¶ 57. These allegations are sufficient to plead a violation of FSIPA.

### IV. Conclusion

Waldemar has alleged sufficient facts under New York and Florida law to plead her various causes of actions. Although Defendants raise concerns regarding the viability of the causes of action, to the extent they rely on the alleged failure to disclose the FINRA bar and Waldemar's oral instructions, they are insufficient to justify dismissal at this stage of the litigation.

**Accordingly, it is ORDERED**:

1. Defendants' Amended Motion to Dismiss (Doc. 17) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on December 4, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any